UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Edwin Arthur Ehlers, II,                          Civil No. 13-2555 (JNE/FLN)

                    Petitioner,

     v.                                            **REPORT AND**
                                                   **RECOMMENDATION**
Denise Wilson, Warden,

                    Respondent.

_____

Petitioner, *pro se*.
Katharine Buzicky, Assistant United States Attorney, for Respondent.
_____

**THIS MATTER** came before the undersigned United States Magistrate Judge on a Petition

for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 filed by Petitioner Edwin Arthur Ehlers II

(ECN No. 1). Petitioner now moves for a finding of uncontested facts and for summary judgment

(ECF No. 17). The matter was referred to the undersigned for Report and Recommendation pursuant

to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons set forth below, the Court recommends that

Petitioner's motion be **DENIED** and the petition be **DISMISSED** with prejudice.

## I. BACKGROUND

On August 21, 2007, a military judge sitting as a general court-martial convicted Petitioner

of (1) one specification of sodomy with a child under the age of 12 years by force and without

consent, in violation of Art. 125, Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 925; (2)

one specification of assault consummated by a battery, in violation of Art. 128, UCMJ, 10 U.S.C.

§ 928; and (3) one specification of indecent liberties with a child under the age of 16 years, in

violation of Art. 134, UCMJ, 10 U.S.C. § 934. Response to Pet. for Writ of Habeas Corpus Ex. 1,

ECF No. 10. Petitioner was sentenced to confinement for a period of 25 years, forfeiture of all pay

and allowances, reduction to pay grade E-1, and a dishonorable discharge. *Id.*

The Court accepts the facts of this case as stated by the Navy-Marine Corps Court of Criminal Appeals ("NMCCA"):

> While assigned to Camp Pendleton, California, the [Petitioner] and his family became friends with their next door neighbors, Petty Officer Second Class [S] and his family, including their four year-old daughter, [H.S.]. The two families were close, and their children played and spent time together at each family's house. The [Petitioner's] former spouse, Gloria, testified that she occasionally babysat the [S] family children in her home, sometimes in the company of the [Petitioner].

> At the time of the alleged offenses, Gloria testified that the [Petitioner] routinely viewed pornography from the internet, and maintained a collection of pornography consisting of three digital video disks (DVDs). Gloria further testified that in August 2002, she underwent a hysterectomy and, as a result, experienced a lack of sexual drive and mood swings, which affected the marital relationship between her and the [Petitioner]. The couple separated in April 2004, and subsequently divorced.

> While living next door to the [S] family, the [Petitioner] babysat for [H.S.] on at least one occasion while her father was on deployment and her mother was sick as a result of a pregnancy. [H.S.] testified that the [Petitioner] masturbated in her presence, and spanked her on the buttocks with his hand. [H.S.] also testified that the [Petitioner] put "a type of lotion on his hand," put his penis into her mouth, and that later "white stuff came out." [H.S.] testified that she was afraid to tell anybody about the incident because the [Petitioner] told her if she did, her "parents won't love me."

> [H.S.'s] parents testified that she occasionally rubbed her genitals very hard. After the [S] family moved to Parris Island, South Carolina in late 2003, the [Petitioner's] former stepdaughter, [R.H.], visited during her summer vacation. [H.S.'s] parents mentioned [H.S.'s] behavior to [R.H.], who in turn spoke to [H.S.]. During this conversation, [H.S.] said that she had been sexually abused by the [Petitioner]. [H.S.'s] parents related these allegations to medical care providers, and later to agents of the Naval Criminal Investigative Service (NCIS).

> Towards the end of the NCIS investigation, Special Agent (SA) Eric [M] interviewed the [Petitioner]. The [Petitioner] admitted to viewing pornography and masturbating to ejaculation in the presence of [H.S.], and to spanking her on the buttocks while in the process of this sexual activity. The [Petitioner] also admitted that [H.S.] watched him while he masturbated, and drew a diagram of his living quarters to indicate where [H.S.] was standing during the incident.

*United States v. Ehlers*, No. 200800190, 2009 WL 1863382, at *1–2 (N-M. Ct. Crim. App. June 30,

2009) (internal citations omitted).

Pursuant to the UCMJ, no court-martial sentence becomes effective until it is reviewed and approved by the convening authority. Art. 60, UCMJ, 10 U.S.C. § 860. Petitioner submitted numerous pages of documentation to the convening authority for consideration, alleging (1) the facts were insufficient to convict Petitioner due to inconsistent testimony by the victim and the victim's parents; (2) the prosecution behaved inappropriately during the investigation; (3) the NCIS's investigation was inadequate; (4) Petitioner's attorneys were ineffective; (5) the charges against Petitioner were multiplicitous; and (6) Petitioner's sentence was unreasonable. ECF No. 10, Ex. 3 at 1–10. On February 19, 2008, after reviewing the trial record and the matters submitted by Petitioner, the convening authority approved the sentence, except for it disapproved of any confinement in excess of nineteen years. *Id.*, Ex. 1 at 3.

The convening authority forwarded Petitioner's case to the NMCCA for review. *Id.* On appeal, Petitioner alleged that the trial court erred in five ways: (1) the trial evidence was factually and legally insufficient to convict Petitioner; (2) Petitioner was prejudiced due to ineffective assistance of counsel, prosecutorial misconduct, and unlawful command influence; (3) the charges and specifications against Petitioner constituted an unreasonable multiplication of charges; (4) the charges were multiplicitous; and (5) Petitioner's sentence was unduly disproportionate. *Id.*, Ex. 4. In addition, Petitioner filed a petition for a new trial pursuant to Rule for Courts-Martial 1210 and Article 73 of the UCMJ. *Id.*, Ex. 5. Accompanying the petition, Petitioner provided twenty-six documents he claimed were obtained after his conviction, which allegedly showed that key trial witnesses testified untruthfully. *Id.*, Ex. 5. On June 30, 2009, the NMCCA denied the petition for a new trial and affirmed Petitioner's conviction and sentence. *See Ehlers*, 2009 WL 1863382, at *6.

Following the decision, Petitioner filed a motion with the NMCCA on July 20, 2009 for *en banc* consideration of his case. ECF No. 10, Ex. 7. In his motion, Petitioner alleged prosecutorial misconduct, multiplication of charges, ineffective assistance of counsel, and that the factual evidence was insufficient for his conviction. *Id.* The NMCCA denied Petitioner's motion on July 27, 2009. *Id.*, Ex. 8.

Thereafter, Petitioner petitioned the U.S. Court of Appeals for the Armed Forces ("CAAF") to review the NMCCA's decision. *Id.*, Ex. 9. The CAAF, however, denied the petition for review on April 23, 2010. *Id.*, Ex. 10. On May 3, 2010, Petitioner requested that the CAAF reconsider its decision, arguing that the court should hear his case due to insufficient evidence, prosecutorial misconduct, and multiplicious charges. *Id.*, Ex. 11. The CAAF denied the petition for reconsideration on June 23, 2010. *See United States v. Ehlers*, 69 M.J. 190 (C.A.A.F. 2010). Petitioner then filed a petition for a writ of certiorari to the U.S. Supreme Court on September 21, 2010. ECF No. 10, Ex. 13. The Supreme Court denied the petition on November 1, 2010. *Id.*

After exhausting his remedies through appellate review, Petitioner filed a Petition for Extraordinary Relief in the Nature of a Writ of Habeas Corpus with the NMCCA on December 27, 2011. *Id.*, Ex. 15. Such petition was based on: (1) the charges and specifications under Article 134 of the UCMJ failed to state an offense; (2) Petitioner's Sixth Amendment speedy trial rights were violated; (3) the military judged abused his authority by failing to dismiss the charges because the Petitioner's right against self-incrimination was violated; (4) the prosecution withheld exculaptory evidence at trial; (5) the military judge's findings were ambiguous; (6) NCIS failed to follow established directives by failing to report the allegations at issue to the Family Advocacy Program; and (7) an NCIS special agent tampered with evidence. *Id.*, Ex. 15 at 2. The NMCCA denied his

petition on December 27, 2011. *Id.*, Ex. 15 at 5. The CAAF thereafter denied Petitioner's petition for review of the NMCCA's decision. *See United States v. Ehlers*, No. 12-8019, 2012 CAAF LEXIS 223 (C.A.A.F. Feb. 23, 2012).

On April 21, 2011, Petitioner filed a motion for a writ of habeas corpus pursuant to 28 U.S.C. § 2255 in the Southern District of California alleging constitutional errors in his court-martial, including denial of his right to counsel, ineffective assistance of counsel in violation of the Sixth Amendment, and withholding of exculpatory evidence. *See Ehlers v. United States*, No. 11-CV-882, 2011 WL 4626163 (S.D. Cal. Oct. 6, 2011). The court dismissed Petitioner's motion without prejudice for lack of jurisdiction, finding that the petition should have been filed pursuant to 28 U.S.C. § 2241 in the district where Petitioner was confined. *Id.* at *3.

Petitioner accordingly filed the present Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 in this District on September 17, 2013. ECF No. 1. In support of his petition, Petitioner argues that he is innocent of the crimes for which he was convicted due to *Brady* violations, inconsistent witness testimony, and ineffective assistance of counsel. *See id.* at 6–7; Pet'r's Reply 4, ECF No. 15. In support of this contention, Petitioner purports to provide the Court with twenty pieces of "new evidence" that were not presented at trial. *See* ECF No. 1, App'x A; ECF No. 2 at 25–27. Additionally, Petitioner argues that inconsistencies in the testimony of numerous witnesses, including the victim, show that he was not guilty of the crimes for which he was convicted. *See generally id.* at 28–38. In opposition to the petition, Respondent claims that the petition should be denied because the military courts gave his claims "full and fair consideration" and no new evidence supports his claim of actual innocence. *See generally* ECF No. 10.

Subsequently, Petitioner filed the present *pro se* motion, stylized as a "motion for finding

of uncontested facts, motion for partial summary judgment under Federal Rules of Civil Procedure Rules 8 and 56, and for summary judgment under Rule 56." ECF No. 17. After a liberal reading of Petitioner's motion, it appears that he seeks this Court to make a finding that Respondent has admitted the facts and allegations made by Petitioner in his habeas petition and therefore grant summary judgment in favor of Petitioner. *See generally* ECF No. 17. Respondent opposes this motion and argues that it has not admitted Petitioner's allegations and therefore summary judgment is inappropriate. *See generally* Response in Opp'n to Pet'r's Mot. for Summ. J., ECF No. 19.

## II. PETITIONER'S MOTION FOR A FINDING OF UNCONTESTED FACTS AND FOR SUMMARY JUDGMENT

### A.    Motion for a finding of uncontested facts

Petitioner claims that this Court should find that the facts alleged in his habeas petition are uncontested because Respondent did not explicitly deny every allegation in its response to the Petition. ECF No. 17 at 3. Because "any allegations not denied in the response are deemed admitted," Petitioner claims that "there can be no doubt that the respondent knowingly and intentionally admitted the facts alleged by Petitioner." *Id.* Respondent opposes this motion, arguing that she it did not admit any of the facts or claims alleged by Petitioner. *See* ECF No. 19 at 2.

After Petitioner filed his petition for habeas relief, the Court ordered Respondent to "prepare and file a written answer in response to Petitioner's habeas petition, certifying the true cause of Petitioner's detention, and showing cause why the writ should not be granted." Order 1, ECF No. 3. The Court further explained that the answer must include (1) a reasoned memorandum of law fully stating Respondent's legal position on Petitioner's claims, and (2) any affidavits and exhibits that are needed to establish the lawfulness and correct duration of Petitioner's incarceration, in light of the issues raised in the petition. *Id.* Pursuant to the Court's Order, Respondent filed a response

to the petition, wherein Respondent set forth her legal position in opposition to Petitioner's claims. *See* Response to Pet. for Writ of Habeas Corpus, ECF No. 10. Specifically, Respondent claimed that Petitioner's petition should be denied because (1) the claims raised in the petition received full and fair consideration from the military courts, and (2) no new evidence supported Petitioner's claim of actual innocence. *Id.* at 12–18. Respondent attached 18 exhibits to her response in further support of her position.

Petitioner now appears to claim that because Respondent did not explicitly deny every allegation outlined in his petition—as a defendant might do in an answer to a complaint in a traditional civil case—the allegations and facts in his petition must be deemed admitted pursuant to Rule 8(b)(6) of the Federal Rules of Civil Procedure.[1] The Court disagrees.

The procedure a Respondent must follow when responding to a habeas petition is outlined in the Rules Governing Section 2254 Cases, not the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 81(a)(4) ("[The Federal Rules of Civil Procedure] apply to proceedings for habeas corpus . . . to the extent that the practice in those proceedings (A) is not specified in a federal statute, the Rules Governing Section 2254 Cases, or the Rules Governing Section 2255 Cases . . . ."); R. Gov. Sec. 2254 Cases 1(b) ("The district court may apply any or all of these rules to a habeas corpus petition not covered by Rule 1(a)."); *Wedington v. Holder*, No. 12-2474, 2012 WL 5465975, at *1 (D. Minn. Nov. 9, 2012) ("[T]he Rules Governing Section 2254 Cases may be applied to habeas petitions brought under 28 U.S.C. § 2241 in addition to cases brought under 28 U.S.C. § 2254."). Rule 5 of the Rules Governing Section 2254 Cases states that a "respondent is not required to answer

---

[1]
       Rule 8(b)(6) states, "An allegation—other than one relating to the amount of damages—is admitted if a responsive pleading is required and the allegation is not denied."

the petition unless a judge so orders," and that the "answer must address the allegations in the petition." Here, Respondent complied with the Court's Order and filed an answer to the petition. Respondent's answer outlined why she believes the allegations in Petitioner's petition are without merit. Nothing in this response implied that she admitted the allegations made by Petitioner. Accordingly, the Court concludes that Respondent's answer was proper under the Rules. Petitioner's motion for a finding of uncontested facts should therefore be denied.

**B.      Motion for summary judgment**

Petitioner additionally asserts that the facts and allegations alleged in his petition support his motion for summary judgment. ECF No. 17 at 4–9. However, motions for summary judgment are not proper in habeas cases. *See Bauer v. Gonzales*, No. 06-1763, 2006 WL 2735460, at *3 (D. Minn. Sept. 25, 2006) (denying a motion for summary judgment because it was not proper in a habeas case). Nevertheless, even if summary judgment were a proper method for resolving this petition, Petitioner's motion should be denied as moot because the Court concludes that the petition should be denied on the merits. *See infra*. Part III.

### III. MERITS OF THE PETITION FOR A WRIT OF HABEAS CORPUS

**A.      Standard of review**

"Military law . . . is a jurisprudence which exists separate and apart from the law which governs in our federal judicial establishment." *Burns v. Wilson*, 346 U.S. 137, 140 (1953). As such, federal courts do not have "appellate jurisdiction to supervise the administration of criminal justice in the military." *Haughton v. United States*, No. 08-311, 2009 WL 1562750, at 11 (D. Minn. June 2, 2009) (quoting *Noyd v. Bond*, 395 U.S. 683, 694 (1969)).

"[T]he scope of a habeas corpus review of a military conviction is more narrow than a habeas

corpus review of a conviction by a civil court." *Swisher v. United States*, 354 F.2d 472, 475 (8th Cir. 1966). "In military habeas corpus cases, . . . it would be in disregard of the statutory scheme if the federal civil courts failed to take account of the prior proceedings—of the fair determinations of the military tribunals after all military remedies have been exhausted." *Burns*, 346 U.S. at 142. Therefore, it is not the duty of the civil courts to re-examine and re-weigh each item of evidence or events which tend to prove or disprove one of the allegations in the applications for habeas corpus. *Id.* at 144. "It is the limited function of the civil courts to determine whether the military have given fair consideration to each of these claims." *Id.* In other words, federal civil courts "must defer to the decision of the military court if that court has given fair consideration to the claims advanced in the habeas petition." *Gilliam v. Bureau of Prisons*, No. 99-1222, 2000 WL 268491, at *2 (8th Cir. Mar. 10, 2000) (citing *Burns*, 346 U.S. at 142–44). "[W]here an issue is adequately briefed and argued before the military courts the issue has been given fair consideration, even if the military court disposes of the issue summarily." *Allen v. U.S. Air Force*, 603 F.3d 423, 431 (8th Cir. 2010) (quoting *Roberts v. Callahan*, 321 F.3d 994, 997 (10th Cir. 2003)).

Additionally, federal courts will not review claims that the prisoner failed to raise in the military court. *Watson v. McCotter*, 782 F.2d 143, 145 (10th Cir. 1986). In other words, if an issue was not raised in the military courts, it is procedurally barred and not open for review by the federal habeas court. *Hurn v. McGuire*, No. 04-3008, 2005 WL 1076100 (D. Kan. May 6, 2005).

A court may, however, reach the merits of a procedurally barred claim "if the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Osborne v. Purkett*, 411 F.3d 911, 919 (8th Cir. 2005). The "fundamental miscarriage of

justice" exception involves claims of actual innocence. *See Narcisse v. Dahm*, 9 F.3d 38, 40 (8th Cir. 1993) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339–40 (1992)). In other words, "[i]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for procedural default." *Osborne*, 411 F.3d at 920. Therefore, actual innocence, if proved, serves as a gateway through which a petitioner may pass if a constitutional claim is procedurally barred. *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013). In order to show actual innocence, the petitioner must (1) come forward with new evidence and (2) show that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Osborne*, 411 F.3d at 920. "Evidence is only 'new' if it was not available at trial and could not have been discovered earlier through the exercise of due diligence." *Id.* (internal quotation marks omitted).

**B.    Conclusions of law**

In his petition, Petitioner asserts actual innocence and argues that "his trial was tainted by *Brady* violations and ineffective assistance of counsel." *See* ECF No. 15 at 4. Petitioner provided 18 pieces of what he refers to as "new evidence" that purportedly shows that these constitutional errors "led to the conviction of an innocent man." *See* ECF No. 2 at 1, 25–27. After a review of the record and the submitted evidence, however, the Court concludes that most of Petitioner's evidence and arguments were given full and fair consideration by the military courts, to which the Court must defer, and any remaining evidence does not meet the standard required to show actual innocence.

**1.    Alleged *Brady* violations**

Petitioner argues that the prosecution committed *Brady* violations by failing to (1) produce the results of Petitioner's polygraph exam performed prior to his trial; (2) disclose evidence that was

contrary to H.S.'s father's testimony at trial that he took H.S. to the hospital in June 2004; and (3) produce a medical record dated December 12, 2003, which purportedly showed the results of a sexual abuse screening of H.S. *See* ECF No. 2 at 38–40.

Initially, the Court finds that Petitioner's first and second alleged *Brady* violations were given full and fair consideration by the military courts. Petitioner raised the issue of nondisclosure of the polygraph exam in his arguments to the military convening authority following his court-martial.[2] *See* ECF No. 10, Ex. 3 at 5. The convening authority considered this evidence prior to approving Petitioner's conviction. *See id.*, Ex. 1 at 3. As to Petitioner's second claim, Petitioner states that he received an email from the Beaufort Naval Hospital that purportedly shows that H.S. did not visit the hospital in June 2004, contrary to what her father testified to at trial. This email, however, was included in Petitioner's petition to the NMCCA for a new trial. *See* ECF No. 10, Ex. 5 at 3, encl. 2. In denying the petition, the NMCCA stated that no newly discovered evidence was presented that necessitated a new trial. *Ehlers*, 2009 WL 1863382, at *6. Accordingly, the Court concludes that the military courts gave full and fair consideration to Petitioner's first two allegations and defers to their decisions. *See Gilliam*, 2000 WL 268491, *2 (stating that federal civil courts "must defer to the decision of the military court if that court has given fair consideration to the claims advanced in the habeas petition").

As to Petitioner's claim that the prosecution committed a *Brady* violation by failing to

---

[2]

According to the UCMJ, the convening authority may, when reviewing a court-martial, approve, disapprove, commute, or suspend the sentence of the court-martial in whole or in part. Art. 60(c)(2)(B), UCMJ. As part of this process, "[t]he accused may submit to the convening authority any matters that may reasonably tend to affect the convening authority's decision whether to disapprove any findings of guilty or to approve the sentence." Rules for Courts-Martial 1105(b)(1).

produce a medical record dated December 12, 2003, the Court finds that such claim is procedurally defaulted because it was not raised in Petitioner's direct appeals before the military courts. *See Haughton v. United States*, No. 08-311, 2009 WL 1562750, at *6 n.9, *10 (D. Minn. June 2, 2009) (citing *Felton v. Lansing*, 55 Fed. Appx. 529, 530 (10th Cir. 2003) ("In addition, federal courts will not review petitioners' claims on the merits if they were not raised at all in the military courts.")). Petitioner attempts to bypass this procedural bar by arguing that a failure to consider this claim would result in a fundamental miscarriage of justice because he is innocent of the crimes for which he was convicted. *See* ECF No. 15 at 4 ("The Petitioner raises the claim of [a]ctual [i]nnocence, and puts forth that . . . his trial was tainted by *Brady* violations and ineffective assistance of counsel (i.e., his trial was not free of harmful constitutional error)."). As stated above, however, in order to use the argument of actual innocence as a gateway for this Court to consider his constitutional claims, he must present "new evidence" which shows that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Osborne*, 411 F.3d at 920.

Assuming without deciding that such evidence is "new" and could not have been reasonably obtained prior to trial due to its concealment, the Court concludes that Petitioner cannot meet his burden to show that no reasonable juror would have convicted him in light of the new evidence. Contrary to Petitioner's argument that the December 2003 medical record unequivocally indicates that "no evidence was found which indicated that [H.S.] had ever been sexually assaulted or abused," *see* ECF No. 2 at 36, 39, a review of the actual medical record simply indicates that H.S. was screened for sexual assault/abuse while visiting a doctor for a fever and cough. *See* ECF No. 1, App'x A § 4. This visit was unrelated to the present case, and the record does not state any specific findings made by the examining physician. *See id.* Based on this limited circumstantial

evidence, the Court cannot say that no reasonable juror would have convicted Petitioner had this evidence been available at trial. Accordingly, the Court concludes that Petitioner cannot use a claim of actual innocence to bypass the fact that his *Brady* violation claim is procedurally barred.

### 2. Ineffective assistance of counsel

Petitioner additionally claims that he received ineffective assistance of counsel during his trial. *See* ECF No. 2 at 40–48. Specifically, Petitioner argues that his defense counsel (1) failed to investigate the prosecution's witnesses; (2) presented no defense witnesses despite having them readily available; and (3) improperly suppressed H.S.'s original, videotaped statements. *Id.* at 42.

As to Petitioner's first and second claims regarding his counsel's failure to investigate the prosecution's witnesses and call no defense witnesses, these arguments were previously made in Petitioner's appeal and clemency request to the convening authority, in his appeal to the NMCCA, and in his motion to the NMCCA for *en banc* reconsideration. *See* ECF No. 10, Ex. 3 at 6–7, Ex. 4 at 17–23, Ex. 7 at 4. In considering his ineffective assistance of counsel claim the NMCCA held, "[W]e specifically find that the appellant has failed to meet his burden to show that his defense counsel's performance fell below an objective standard of reasonableness." *Ehlers*, 2009 WL 1863382, at *6. The Court, therefore, finds that the military courts gave full and fair consideration to these claims of ineffective assistance of counsel, and the Court defers to their decision. *See Gilliam*, 2000 WL 268491, *2.

As to Petitioner's argument that his counsel should not have moved to suppress H.S.'s original, videotaped statements, the Court concludes that this argument is procedurally barred because Petitioner did not raise it during his appellate review in the military courts. *See Haughton*, 2009 WL 1562750, at *6 n.9, *10. Accordingly, Petitioner's petition for habeas relief on the ground

of ineffective assistance of counsel must be denied.

### 3. Inconsistent victim testimony

In his petition, Petitioner claims that changes in the victim's testimony throughout the investigation and trial requires habeas relief. *See* ECF No. 1 at 7. This argument, however, was raised in his appeal to the NMCCA. *See* ECF No. 10, Ex. 4 at 9–17. The NMCCA rejected the argument that such inconsistencies made the victim's testimony not credible, stating:

> Even though HS was four years old at the time of the offense, and eight years old when she testified at trial, we find that HS' recounting of events was compelling and credible, most especially because it was corroborated, in large part, by the appellant's own admissions to NCIS. On the whole of these facts, we find that the evidence amounted to a strong case against the appellant. While we have noted inconsistencies in HS's testimony regarding time and location, such inconsistencies are not uncommon when any abuse victim testifies[.]

*Ehlers*, 2009 WL 1863382, at *3.

The Court concludes that the military courts gave full and fair consideration to Petitioner's claim of inconsistent victim testimony, and defers to their decisions. Therefore, Petitioner's petition for habeas relief on the ground of inconsistent victim testimony must be denied.

### 4. Actual innocence

Petitioner's primary argument is that he is actually innocent of the crimes for which he was convicted, and he attempts to use this argument as a gateway for this Court to consider his constitutional claims. In his memorandum in support of his petition, Petitioner points to 18 pieces of "new" evidence[3] that allegedly support his claim of actual innocence. *See* ECF No. 2 at 25–27; *see also* ECF No. 1, App'x A. Petitioner, however, indicated in his memorandum that 11 out of the

---

[3] In Petitioner's brief, 20 items are listed. Petitioner, however, lists two documents twice.

18 pieces of evidence were "items which Defense Counsel possessed but, inexplicably, did not use." ECF No. 2 at 25. As stated above, in order to support a claim of actual innocence, Petitioner must first come forward with new evidence that was not available at trial and could not have been discovered earlier through the exercise of due diligence. *Osborne*, 411 F.3d at 920; *see also Amrine v. Bowersox*, 238 F.3d 1023, 1029 (8th Cir. 2001). Evidence that Petitioner's counsel possessed at trial, therefore, is not "new" for purposes of establishing Petitioner's innocence. The fact that evidence was not introduced at trial does not make it "new" for purposes of deciding a claim of actual innocence. *See Kidd v. Norman*, 651 F.3d 947, 951–53 (8th Cir. 2011) (rejecting the argument that evidence is "new" as long as it was "not presented" at trial).

Of the remaining seven pieces of evidence that Petitioner does not admit were in the possession of his defense counsel at the time of his trial, four were in fact known and available to him and his counsel at trial. Specifically, Petitioner states that the following pieces of evidence are new and should be considered in his claim of actual innocence: (1) an affidavit of Petitioner outlining what he would have testified to had he been called as a witness; (2) the trial testimony of a witness; (3) an affidavit of Petitioner's wife outlining what Petitioner's expert would have testified to had he been called as a witness at trial; and (4) emails outlining what R.H. would have testified to had R.H. been called as a witness at trial. *See* ECF No. 2 at 26–27. Contrary to Petitioner's assertion that this evidence is "new," it is clear to this Court that such evidence was known to Petitioner at the time of his trial. Petitioner makes no allegations that these witnesses were unknown to him at the time of his court-martial or that the substance of their testimony was recently discovered. Indeed, Petitioner raised numerous ineffective assistance of counsel claims in his appeals before the military courts regarding the substance of what the aforementioned witnesses

would have testified to had they been called at trial. *See* ECF No. 10, Exs. 1, 3, 4, 6, and 15. Accordingly, the Court concludes that such evidence is not "new" for purposes of a claim of actual innocence.

Of the three remaining pieces of "new" evidence, two were included in Petitioner's petition to the NMCCA for a new trial. *See* ECF No. 10, Ex. 5, encls. 2 and 8. According to the NMCCA, it will not grant a new trial unless the petitioner can present new evidence that would "probably produce a more favorable result for the accused." *See Ehlers*, 2009 WL 1863382, at *6. In considering all of the materials submitted by Petitioner in his petition for a new trial, the NMCCA stated, "The appellant's petition amounts to a restatement of issues already litigated at trial, and lacks reference to any 'newly discovered evidence.'" *Id.* Accordingly, this issue was given fair consideration by the military courts, and the Court defers to their decisions. *See Allen v. U.S. Air Force*, 603 F.3d 423, 431 (8th Cir. 2010) ("[W]here an issue is adequately briefed and argued before the military courts the issue has been given fair consideration, even if the military court disposes of the issue summarily.").

The only remaining piece of evidence is H.S.'s medical record from December 2003 that showed she was screened for sexual assault/abuse. *See* ECF No. 1, App's A § 4. As stated above in the Court's *Brady* discussion, however, the Court cannot conclude, based on this limited circumstantial piece of evidence, that no reasonable juror would have convicted Petitioner had this evidence been available at trial. *See supra* Part III.B.1. Accordingly, to the extent Petitioner's habeas petition asserts a claim of actual innocence, the Court concludes that the petition must be denied.

## IV. RECOMMENDATION

Petitioner's constitutional claims that the prosecution committed *Brady* violations and that

he received ineffective assistance of counsel are either (1) barred because they were not raised in his arguments to the military courts or (2) already given full and fair consideration by the military courts. Additionally, Petitioner has not provided this Court with any new evidence that would establish his innocence and allow the Court to consider his procedurally barred claims on the merits.

Accordingly, based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

A. Petitioner's motion for a finding of uncontested facts (ECF No. 17) be **DENIED**;

B. Petitioner's Petition for a Writ of Habeas Corpus Under 28 U.S.C. § 2241 (ECF No. 1) be **DENIED**;

C. Petitioner's motion for summary judgment (ECF No. 17) be **DENIED as moot**; and

D. This matter be **DISMISSED WITH PREJUDICE**.

DATED: July 17, 2015 _s/Franklin L. Noel_
FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **August 3, 2015**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.